## Thomas Hale v. The City of New Orleans.

A bill of exceptions to the rejection of evidence in the court below will not be noticed in the Supreme Court, unless it contains the grounds upon which the testimony was rejected.

The defendant may give in evidence, without amendment of the pleadings, facts which have occurred after issue joined, having a direct bearing upon the matters in controversy, and properly admissible in evidence, the power being reserved to the court to order a continuance or grant a new trial, when the other party is taken by surprise.

An amendment to the pleadings, setting up such new matter, if asked for, should be allowed.

A party must show an actual eviction, in order to recover in an action of warranty.

The return to a writ of possession in a suit to which the warrantor was not a party, is not conclusive evidence of eviction.

Where contiguous lots of ground were sold separately at public auction, and adjudicated to the same purchaser, *Held :* that it was a sale of a number of independent things, giving a right of warranty as to each, and that the purchaser would have no action of rescission except for such lots as were deprived of their proportions by eviction from part of them.

The purchaser who went into possession of the property sold, is only entitled to recover from his warrantor interest on the price paid, from the date of the eviction.

The warrantor is not liable for the taxes paid on the property by his vendees.

The fourth paragraph of Art. 2482 of the Civil Code does not include counsel fees for bringing the action against the warrantor.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J.
P. E. *Bonford,* for plaintiff. J. J. *Michel,* for defendant and appellant.

Merrick, C. J. In March, 1853, in pursuance of permission given by the Act of the Legislature approved March 21st, 1850, a portion of the batture in front of the Second Municipality, now the First District of New Orleans, was sold at public auction, for the benefit of the city and others, parties to an act of compromise made 20th September, 1820.

At this sale the plaintiff became the purchaser of twenty-two lots in the square bounded by Front, Julia, Fulton and St. Joseph streets, for the aggregate sum of $70,600.

It appears from the adjudication, that twenty-one of the lots sold for $3100 each, and the lot fronting on Fulton, St. Joseph and Front streets for $5500.

Three acts of sale were executed for the property; two for six lots each, at the aggregate prices of $18,600, and numbered from two to thirteen, and one act for ten lots numbered from fourteen to twenty-three inclusive, for $33,400. The sale was for one-fifth cash, and the balance on a credit of one, two, three and four years, with eight per cent. interest from date until maturity.

At the time of this sale, there was pending a suit against the city of New Orleans, to recover a portion of the batture, which included the entire lot No. 22, a large part of lots Nos. 21 and 23, and a small portion of lot No. 20. This suit was finally determined by this court against the city in February, 1856, and a writ of possession was issued in May following against the city, and returned executed in August, 1856, by putting the *Remys* in possession. The lots were suffered to remain vacant.

In October following, the plaintiff instituted the present action to rescind the sale of all the lots, alleging that the object of his purchase was to erect a large pork inspection warehouse, and by reason of the eviction of a part, the property had become useless for the purposes for which it was bought.

Plaintiff claims judgment for the price and interest, the taxes he has paid, the payments he has made, and counsel fees.

The defendant's counsel attempted to amend the answer, which was a general denial, by alleging that after the institution of this suit, viz, March 14th 1857, the city of New Orleans, in order to protect the title of plaintiff, purchased of *Remy* and others the property they had recovered in their suit against the city, a negotiation having been set on foot for this purpose immediately after the decree in that case.

The judgment of the lower court was in favor of plaintiff for $76,575 67 and interest, and $2000 attorney's fees.

The city appeals.

The record contains two bills of exception filed by the defendant's counsel : one to the reception of evidence, the other to the refusal of the court to allow defendant to file an amended answer.

The first of these bills we cannot notice, because it does not contain the grounds upon which the testimony was rejected, and we have no means of judging correctly of the ruling of the lower court. *Bonnafee* v. *Wiltz*, 10 An., 657.

In regard to the bill of exception taken to the order of the Judge refusing the amended answer called, a peremptory exception, the reason stated for the refusal to receive the amendment was that a party could not amend his pleadings after the suit was fixed for trial.

The record does not inform us, as we perceive, of the day on which the cause was fixed for trial. The bill of exception was filed the 19th day of March, 1857, and the act of compromise or sale from the *Remys* was executed on the 14th, five days previously.

We think that such facts, as occur after issue joined, as have a direct bearing upon the matters in controversy and are admissible in evidence at all, may be offered in evidence without any amendment of the pleadings, the power being reserved to the court to order a continuance or new trial in case the matter was calculated to take the party by surprise. This being the case, we can see no possible objection to the allowance of an amendment to the pleadings, setting up such new matter. It is advantageous to both parties. It benefits the party offering the amendment, because it perpetuates, by written pleadings, the final issue made between the parties. It benefits his adversary, because it confines the issue to the allegations and enables him to take advantage of any variance.

The matter sought to be pleaded having occurred only five days before the offering of the amendment, is an additional reason why it should have been allowed. The rejection of the amendment was equivalent to a refusal to receive the testimony which would have established the same. The matter therein set forth was important, because this action is in the nature of an action of warranty, and plaintiff having gone into possession under his title, has no cause of action unless he shows actual eviction, or facts from which actual eviction may be inferred. If then, the defendant had proven the allegations of his amendment, setting forth the acquisition of *Remy's* title, and connected it with the rebutting proof that the plaintiff had never been actually dispossessed, notwithstanding the return of the writ of possession, it would have established a complete defence to plaintiff's action. For, under our law, a party must show an actual eviction in order to recover in an action of warranty, and a return to the writ of possession between other parties cannot be conclusive even if it amounts to a constructive eviction. *Melançon's Heirs* v. *Duhamel et al.*, 7 L. R., 286 ; *Fletcher's Heirs* v. *Cavallier et al.*, 10 L. R., 120. See also the case of *Laborde* v. *New Orleans*, opinion book 29, p. 595.

This error of the lower court requires, that the case should be remanded for a new trial. But as the judgment is erroneous in some other particulars, we shall notice them, in order that this case may, if possible, be finally disposed of on the next trial in the court below.

Plaintiff does not claim that the suit of the *Remys* covered any portion of his purchase, except lot No. 22 and parts of lots Nos. 20, 21 and 23. Eighteen other lots contiguous to each other are in plaintiff's possession, according to his own showing.

It is not pretended that the plaintiff communicated to the public authorities and those interested therein at the time of sale, his intention to build inspection warehouses; nor is it pretended, that there was any agreement that certain contiguous lots should be sold him, in order that he might carry out his views. He went there, as every other bidder did, with the right to acquire as many lots as his bids would entitle him to, and subject to be defeated by any one who should bid more. The property had been divided into as many distinct things as there were lots, in order to suit the demand of the public and the convenience of the vendors. If they had fallen into the hands of twenty-two purchasers, it is clear that those purchasers could not join and rescind the whole sale if it should turn out that four of them had been evicted from the lots sold them. If the twenty-two should afterwards sell to one vendee, we think he could not exercise any greater right than his immediate vendors.

If the public sales of this kind of property were not considered as the sales of so many distinct things, it would be a misfortune to have one person become the purchaser of many lots, as the rescission would be on a larger scale for the eviction of a small portion of the property.

The suit of *Remy* operated as a constructive notice to the plaintiff, and therefore, there is a stronger reason for holding in this case that sale of the lots was a sale of a number of independent things, giving a right of warranty as to each, and that the purchaser has no action of rescission, except for such lots as have been deprived of their proportions by eviction. C. C. 2428, 865, 2518; *Andry* v. *Foy*, 6 M. 696, 7 M. 33; *Bertrand* v. *Arcuil*, 4 An. 432.

The cases of *D'Aquin* v. *Conner*, 3 L. R., 395, and *McCollom* v. *McCollom*, 6 Rob. 506, are not in point. They were cases of the sales of plantations, where there were evictions of large portions of the same.

In the event that the proof shall show (on a new trial) an actual eviction of the plaintiff of parts of four lots previous to the institution of his suit, the question will again arise as to the time from which interest must be allowed. We think interest is only due on the principal paid from the date of the eviction. The property would doubtless have been productive in other hands, and the proof shows that if a fence had been put around it, it would have rented for $1800 or $2000 per annum. The use of the property is considered equivalent to interest on the price. See *D'Aquin* v. *Coiron*, 3 L. R. 395; 12 L. R., 313; 16 L. R. 35. The case of *Burrows* v. *Pierce*, cited by plaintiff's counsel, is not in point. *Burrows* " never had nor could obtain possession or enjoyment of the property," and Mr. Justice Preston says " he should recover interest on the price paid for it from the day of sale, and which he could not have recovered if he had enjoyed the fruits and revenues of the property." 6 An., 304.

In regard to the taxes paid by the plaintiff, they are dues to the government for the possession of the property, and if he had retained the price instead, he would have been compelled to pay taxes upon the capital in his hands. Defendant

HALE
v.
NEW ORLEANS.

cannot be charged with the taxes paid by plaintiff, should the action be maintained.

The paving of the property depends upon other principles. It is an expense which tends to the preservation of the property, and doubtless could have been recovered from the *Remys* in the event, and for the amount, it exceeded the revenues of the property. We can see no good reason, if there be a recovery, why the city should not pay *pro rata* for the pavement and gutters in front of said four lots, as it is a permanent improvement and increases the value of the property to which the city will then have succeeded by virtue of the purchase of the rights of *Remy* to the property in controversy, and the rescission of the sale.

The allowance of attorney's fees was also erroneous. We have had occasion repeatedly to state that the law does not ordinarily allow fees for counsel who are employed to vindicate the rights of parties. See *Young* v. *Courtney*, 13 An.; *Melançon's Heirs* v. *Robichaud*, 19 L. R., 360. The case of *Tear* v. *Williams*, 2 An., 868, was decided under Article 2482 of the Civil Code; but the case in 19 L. R., 360, does not seem to have been called to the attention of the court then in session at Alexandria. On a reconsideration of the question, we think that the damages mentioned in the fourth paragraph of Article 2482 do not include counsel fees for bringing the action in which they are sought to be recovered. We are satisfied with the reasoning of the court in the case of *Melançon's Heirs* v. *Robichaud's Heirs*, 19 L. R., 357.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that this case be remanded to the lower court for a new trial, with instructions to receive the amended answer of the defendant, and to be governed by the views herein expressed, and in other respects to proceed according to law, the plaintiff paying the costs of appeal.

BUCHANAN, J., dissenting. I feel myself constrained to dissent from the opinion of the majority of the court.

I think that the defendant had no right to change the issue so as to defeat plaintiff's right of action, after that right had been asserted in this suit.

I think the judgment of the lower court should be affirmed.