393 So.2d 708 (1981)
CALVARY TABERNACLE
v.
LOUISIANA CENTRAL BANK.
No. 80-C-1727.
Supreme Court of Louisiana.
January 26, 1981.
William G. Avery, Baton Rouge, for plaintiff-applicant.
James H. Brown, Melvin Bellar, Baton Rouge, Dale, Brown & Wooley, Ferriday, for defendant-respondent.
WATSON, Justice.
Plaintiff, Calvary Tabernacle, contends that defendant, Louisiana Central Bank, warranted the Tabernacle's title to a mobile home from which the Tabernacle was evicted.
The Bank held a mortgage from the Crossroads Apostolic Church of Lord Jesus *709 Christ of Louisiana on a two acre tract, described as a three acre tract with improvements, less a one acre tract. The Bank foreclosed on the mortgage. A writ of fieri facias issued which described the property as including three mobile homes, the one now in dispute bearing serial number LM081A0E. That mobile home was also particularly described in the advertisement for the sheriff's sale of the property. At the sale, the Bank's attorney announced to the public that mobile home number LM081A0E was not included in the sale. However, it was not deleted from the property description. The Bank bought the mortgaged property, including mobile home number LM081A0E for $29,000; its appraised value was $37,000. Representatives of the Bank and the Tabernacle were present. The Tabernacle's pastor, James Paul Pruitt, purchased the adjoining one acre tract at the same sale for approximately $3,000. He purchased it individually for the future use of his church.
The parties negotiated a sale of the two acre tract from the Bank to the Tabernacle for $31,925.98, that amount representing the Bank's loan balance, plus attorney fees, interest and costs. The President of the Bank, Howard Hobson, had written authority from the Board of Directors to sell the two acre tract to the Tabernacle. At the insistence of Pastor Pruitt, mobile home number LM081A0E was included in the authorization. The warranty deed had already been drafted to include the mobile home.
The act of sale conveying the two acre tract provides in pertinent part that the Bank:
"... does by these presents GRANT, BARGAIN, SELL, CONVEY AND DELIVER, with full guarantee of title, free of all mortgages and encumberances [sic], and with complete transfer and subrogation of all rights and actions of warranty, against all former proprietors of the property herein conveyed unto
"CALVARY TABERNACLE ... the following described property, to-wit:
* * * * * *
"Together with all buildings and improvements and appurtenances thereon,... and particularly including
"1. One (1) 1973 Oak Manor Mobile Home, Serial Number LM081A0E ...".
After the sale, the Tabernacle took possession of the property and spent approximately $1,000 to improve the mobile home. The Tabernacle was then advised of an adverse claim to the mobile home and gave both verbal and written notice to its vendor. Tuloka Affiliates, which held a chattel mortgage on mobile home number LM081A0E, had it seized and bought it at sheriff's sale for its appraised value of $6,995.
The Tabernacle purchased a similar mobile home for $10,698.74 and brought this suit for the value of mobile home number LM081A0E, $1,000 expended to improve it and attorney's fees.
At trial, President Hobson testified that the mobile home was included in the warranty deed only to reassure Pastor Pruitt; that he did not intend to warrant title to the mobile home. Hobson had been advised by the Bank's attorney that the mobile home was not mortgaged. (Tr. 92) Pastor Pruitt testified that he did not bid on the two acre tract at the sheriff's sale because of concern about liens against it.
The trial court concluded that the parties had not intended for the Bank to warrant title to the mobile home but awarded the Tabernacle $1,000 as a matter of "substantial justice". (Tr. 183) The Bank appealed.
The Court of Appeal, 384 So.2d 814, which did not have either a transcript of testimony or narrative of facts,[1] reversed the $1,000 award and entered judgment in favor of the Bank, relying on LSA-C.C. art. 2505. The Tabernacle applied for a writ of review to this Court, which was granted, 391 So.2d 457 (La.).
The issue is whether the terms of the warranty deed should have been altered by the Bank's parol evidence as to its intention in executing the agreement.
*710 Generally, parol evidence is inadmissible to vary the terms of a written transfer of immovable property. LSA-C.C. art. 2276. An exception to this rule is allowed when there are allegations of fraud or error. Gulf States Finance Corp. v. Airline Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965). Here, the Bank alleged "... mutual error and mistake and/or ... misrepresentation or misunderstanding inducing the defendant to sign the instrument." (Tr. 49) However, the parol evidence did not show fraud or mutual error. There may have been a misunderstanding, but it was unilateral on the part of the Bank. The Tabernacle intended to purchase two acres with mobile home number LM081A0E. The Bank agreed to those terms. If the Bank had contemplated quitclaiming the mobile home, it should have stated as much in the deed. Having agreed to the terms asked by the Tabernacle, the Bank cannot defeat the warranty deed by claiming a contrary intention. It is bound by the written agreement. White v. Rimmer & Garrett, Inc., 340 So.2d 283 (La., 1976).
The Court of Appeal erred in relying on LSA-C.C. art. 2505,[2] which applies only when no warranty is stipulated. Since there was no mutual error, the terms of the warranty deed prevail. The Tabernacle is entitled to damages for partial eviction from the thing sold. LSA-C.C. art. 2500.
The trial court erred in not awarding the Tabernacle the value of the mobile home. After the improvements made by the Tabernacle, it was appraised and sold for $6,995. This represents a fair proportion of the total sale price. LSA-C.C. art. 2514. Attorney's fees are not considered part of the costs occasioned by the eviction and cannot be recovered. LSA-C.C. art. 2506; Citizen's Bank v. Jeansonne, 120 La. 393, 45 So. 367 (1907). Judgment is hereby rendered in favor of plaintiff, Calvary Tabernacle, and against the defendant, Louisiana Central Bank, for $6,995 together with legal interest from date of eviction [3] and all costs.
REVERSED AND RENDERED.
NOTES
[1] The record has now been supplemented with the transcript of testimony.
[2] LSA-C.C. art. 2505 provides:

"Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk."
[3] Hale v. City of New Orleans, 13 La.Ann. 499 (1858).