415 So.2d 452 (1982)
Roseluce CHARPENTIER
v.
The LOUISIANA LAND AND EXPLORATION COMPANY.
No. 14808.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*453 Thomas Guzzetta, Thibodaux, for plaintiffs-appellants Viola Eymard, Doris Charpentier, Steven Charpentier, Alvin Charpentier, Lawrence Charpentier and Henry Charpentier.
Donald L. Peltier, Thibodaux, and Lawrence K. Benson, Jr., New Orleans, for defendant-appellee The Louisiana Land and Exploration Co.
Before COVINGTON, COLE and WATKINS, JJ.
COLE, Judge.
Plaintiff, Roseluce Charpentier, filed a suit for declaratory judgment, seeking to be declared the owner of a certain tract of land located in sections 37 and 38 of T-19-S, R-22-E near Golden Meadow, Louisiana. Plaintiff alleged the judgment was necessary because defendant, The Louisiana Land and Exploration Company (LL&E), was adversely claiming parts of this property by virtue of a recorded deed.
After hearing the evidence the trial court determined plaintiff's title contained conflicting descriptions in that the boundaries described and the measurements given did not coincide. The property was described as follows:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about forty-six (46) miles below the City of Thibodaux, having a front on Bayou Lafourche of one hundred nine (109') feet by a depth of forty (40) arpents and a width on the forty (40) arpent line of one hundred fifty-four and one-half (154½') feet, more or less; bounded above by the property of Ernest Eymard, now or formerly, and bounded below in part by land of Louisiana Meadow Company, now or formerly, the lower line of petitioner's said property being sixty (60') feet above and parallel with the upper or northern line of Lot or Section Number 31, Township 19 South, Range 22 East of the Southeastern Land District of Louisiana."
The court noted although the property was described as having a width of 154½ feet at the 40 arpent line it was also described as being bounded above by the property of Ernest Eymard and bounded below by a line running 60 feet above and parallel to the section 31 line.[1] These two boundaries were in reality much more than 154½ feet apart at the 40 arpent line. He found plaintiff and his ancestors in title to have possessed in accordance with the measurement of 109 feet fronting on the bayou and 154½ feet at the 40 arpent line, but such *454 possession ran along the Eymard property rather than along the section 31 line. While the court found plaintiff's title to contain these defects it found defendant to have a perfect title traced back to the sovereign.
Various witnesses testified concerning acts of possession exercised on behalf of each party. After hearing the evidence the court concluded plaintiff had failed to prove any of the alleged acts took place on the disputed tract whereas defendant had established corporeal possession of the area in question. The court rendered judgment against plaintiff and in favor of LL&E, on the basis of record title as well as ten years acquisitive prescription. Plaintiff[2] filed this appeal.
Plaintiff raises eight errors as the basis for his appeal. After examining the record we conclude the trial court did not err in its judgment, therefore we affirm. We address briefly each of the eight errors and we adopt the reasons of the trial court as a part of this opinion.
In considering the eight errors we note some are addressed to determinations of fact and some to determinations of law. Appellants raise four factual errors but all are variations of one common complaint, that the trial court erred in finding defendant, rather than plaintiff, to be in corporeal possession of the disputed tract.
As we have stated in innumerable opinions, the trial court is granted much discretion in its determination of facts and its conclusions will not be disturbed unless the record shows manifest error has been committed. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Dupree v. Pechinay Saint Goban Co., 369 So.2d 1075 (La. App. 1st Cir. 1979), writ refused 1979.
The record here contains testimony of various witnesses for each side, reciting certain acts of possession allegedly exercised over the disputed tract. Plaintiff and his witnesses (permittees) testified they had trapped, hunted or grazed cattle on plaintiff's property for many years but the exact location of these activities was never established. The testimony indicated much of the activity was in the northern portion of the eastern half of section 37 rather than in the southern portion, which is the area in question.
Defendant's witnesses testified concerning various activities on or near the disputed strip. Beginning in 1955 LL&E dug canals along the midsection line of section 37 and 15 feet inside the section line of section 31. These canals surround the controverted land. "Posted" signs were placed at intervals along the canal. LL&E initiated a reclamation project in 1952 whereby the swampy land near the disputed area was pumped dry.
Viewing the evidence as a whole, we are satisfied the trial court did not commit manifest error in deciding defendant rather than plaintiff had exercised corporeal possession sufficient to establish ownership by acquisitive prescription of ten years.
The remaining errors deal with legal matters and will be considered individually. The first is that the trial court erred in failing to hold plaintiff and his ancestors in title were presumed to possess to the full extent of the limits of their title. Plaintiff bases this argument on Civil Code art. 3498 which reads:
"When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits."
The trial court stated, "... plaintiff failed to establish any acts of possession either corporeal or civil preceded by corporeal over the disputed property or that he intended to possess as owner to the limits of this title sufficient for constructive possession." We agree that under the cited code article plaintiff is presumed to possess to the limits of his title. Assuming, arguendo, it was erroneous for the court to require *455 plaintiff to prove such an intention, we find the error to be insignificant because this presumption is rebuttable and was refuted by the evidence showing defendant's corporeal possession. See, Norton v. Addie, 337 So.2d 432 (La.1976); Plaisance v. Collins, 365 So.2d 608 (La.App. 1st Cir. 1978).
Plaintiff contends the court erred in refusing to allow him to amend his petition during trial, after he had rested his case. The purpose of the proposed amendment was to increase the rear width of the described property from 154½ feet to 380 feet. Plaintiff's attorney alleged that through evidence adduced at trial he found it necessary to change the property description in order to rebut a possible claim by defendant that the plaintiff was possessing beyond the limits of his deed.
The general rule on this matter is that the trial court has much discretion in refusing or allowing amendment after an answer is filed and such ruling will not be disturbed unless there has been an abuse of discretion. Independent, Inc. v. Watson, 394 So.2d 710 (La.App. 3d Cir. 1981); Calvary Tabernacle v. Louisiana Central Bank, 384 So.2d 814 (La.App. 3d Cir. 1980), reversed on other grounds 393 So.2d 708 (La. 1981). It has been held to be an abuse of discretion for the trial court to allow such an amendment where the other party didn't have adequate time to prepare to meet the new issue. Wallace v. Hanover Insurance Company of New York, 164 So.2d 111 (La. App. 1st Cir. 1964). Here the plaintiff attempted to expand the property description, and therefore the amount of property in dispute, after plaintiff had rested his case and during defendant's presentation. The entire trial had gone forth on the basis of the initial property description and any changes in that description would certainly change the issues at trial to some extent. We find no abuse of discretion in the trial court's refusal to allow the amendment at that late date.
Plaintiff's next complaint is that the trial court erred in failing to grant him a new trial. In his application for a new trial he mentioned the court's refusal to allow the supplemental petition and then stated he desired a new trial "for the submission of documentary evidence to establish the upper line of his property according to title without which evidence the court can not determine the fixed boundaries of the property described in plaintiff's deeds."
The granting of a new trial is peremptory in some cases and discretionary in others. According to La.Code Civ.P. art. 1972, there are two circumstances where a new trial (in a non-jury case) shall be granted. One, where the judgment is contrary to the law and evidence and two, where the party has discovered new evidence which he could not have obtained before or during trial. It is clear from plaintiff's petition he did not and could not urge the first ground. If he is urging the second ground the trial court properly denied the new trial because of plaintiff's failure to submit a verifying affidavit as required by La.Code Civ.P. art. 1975. It has been held a trial court acts correctly when it refuses to grant a new trial because of the failure to include the verifying affidavit. McDonald v. O'Meara, 149 So.2d 611 (La.App. 1st Cir. 1962).
Plaintiff contends he is not basing his request on the "newly discovered evidence" ground and therefore does not need the verifying affidavit. If he is not urging this ground then it is entirely within the discretion of the trial court whether or not to grant the new trial (La.Civ.P. art. 1973)[3] and we find no abuse of discretion in the court's action.
Plaintiff's final error concerns a stipulation made by the parties. Plaintiff's suit was filed originally as a declaratory judgment and then amended to become a possessory action. By stipulation of counsel and apparently at the trial court's suggestion, the suit was reconverted to a declaratory judgment action. The stipulation was entered into the record as follows:

*456 "It is stipulated between counsel that the matter fixed for trial today will go back to the suit as originally filed, a suit for declaratory judgment, limited to the issue of plaintiff's title by acquisitive prescription, the result of which will be to remove from the suit the issue of possession necessary for possessory action."
In its reasons for judgment the court stated this stipulation meant plaintiff conceded defendant had a better record title. Plaintiff urges the trial court erred in this conclusion.
We agree with plaintiff the stipulation did not mean plaintiff conceded defendant had a better record title. The stipulation did not address directly the issue of record title but only indicated acquisitive prescription would be the key issue. However, this remark by the trial court does not affect the outcome of the case because the court found defendant had in fact proved he had a better title (therefore making plaintiff's alleged "concession" immaterial) and also because the matter was decided not on record title alone but also on defendant's acts of possession which established acquisitive prescription.
For the foregoing reasons, and for the reasons expressed by the trial court and adopted as a part of this opinion, the judgment of the trial court is affirmed. Appellants are to pay costs.
AFFIRMED.
ROSELUCE CHARPENTIER * 17TH JUDICIAL
 DISTRICT COURT
VERSUS NO. 38936 * PARISH OF LAFOURCHE
THE LOUSIANA LAND &
EXPLORATION COMPANY * STATE OF LOUISIANA
* * * * * * * * * * * * * * * * * * * * * *

REASONS FOR JUDGMENT
This is an action by the plaintiff, Roseluce Charpentier, against the defendant, The Louisiana Land and Exploration Company, for a declaratory judgment declaring him to be the owner of certain lands situated in the Parish of Lafourche and ordering the cancellation from the records of Lafourche Parish any instrument asserting title to the said property by the defendant.
Plaintiff alleges that he is the owner of the aforementioned property by virtue of prescriptive title of ten and thirty years, that the defendant adversely claims ownership to portions of said property and, that he is entitled to a declaratory judgment recognizing his ownership of said property.
The defendant answered denying the allegations of the petition, alleging ownership of the disputed property on the basis of record title and alternatively, likewise pleading ten years acquisitive prescription.
By joint stipulation of counsel entered into the record on January 23, 1980, the parties agreed that the suit would be limited to the issue of plaintiff's ownership by virtue of acquisitive prescription, hence plaintiff has, in essence, conceded that the defendant has the better record title.
The property in dispute consists of the rear two-thirds of a tract of land in T19S-R22E, near Golden Meadow, Louisiana, described as follows:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about forty-six (46) miles below the City of Thibodaux, having a front on Bayou Lafourche of one hundred nine (109 `) feet by a depth of forty (40) arpents and a width on the forty (40) arpent line of one hundred fifty-four and one-half (154½') feet, more or less; bounded above by the property of Ernest Eymard, now or formerly, and bounded below in part by land of Louisiana Meadow Company, now or formerly, the lower line of petitioner's said property being sixty (60') feet above and parallel with the upper or northern line of Lot or Section Number 31, Township 19 South, Range 22 East of the Southeastern Land District of Louisiana."
The tract is situated in such a manner that it fronts on the east bank of Bayou Lafourche at the mid-point and along the outside edge of a curve in the bayou. From there it extends outward from the bayou between diverging lines in generally an east-northeasterly direction through the lower side of section 37 and into a portion of the west side of fractional section 38 to *457 the forty (40) arpent line. The disputed property is that portion of this tract lying between the midsection line of section 37, which is approximately 14 arpents from the bayou, and the forty (40) arpent line.
The plaintiff acquired title to the whole of the previously described tract by two separate conveyances of roughly one-half of the property in each deed. The first was a transfer of the lower portion of said property by act of sale dated March 24, 1934, from Manuel Pitre, recorded at Book No. 71, Folio 185, in the conveyance records of the parish, containing the following description:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of the Bayou Lafourche, at about forty-six miles below the Town of Thibodaux, measuring fifty-four feet six inches in front along the said Bayou Lafourche by the ordinary depth; of forty arpents, bounded above by the said vendor and below by the Louisiana, Meadow, Company, together with all the buildings and improvements thereon, and all the rights, ways, privileges and servitudes thereto belonging or in any wise appertaining. Being the said property acquired by the said Manuelle Pitre, from Unesie Pitre."
The second was a transfer of the upper portion of said property by act of sale dated February 14, 1952, from Eugene Cheramie, recorded at Book No. 159, Folio 122, containing the following description:
"A certain lot of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about forty-six (46) miles below the town of Thibodaux, Louisiana. Said property measuring fifty-four and one-half (54½') feet along Bayou Lafourche on the east side of the property by a depth of forty (40) arpents by a width on the rear at the forty arpent line of one hundred (100') feet more or less. Bounded on the west by Bayou Lafourche, on the north by property of Ernest Eymard, now or formerly, on the east by Louisiana Land on the south by purchaser. Being of the same property acquired by vendor from Dr. Stork by an act of sale passed before Harvey Peltier, Sr., Notary in and for the Parish of Lafourche, State of Louisiana."
From these deeds the plaintiff traces his title as follows:
1) By act of sale dated April 1, 1943, recorded at Book No. 106, Folio 2, Eugene Cheramie acquired the upper portion of said property from Dr. Thomas Stark;
2) By sheriff's sale dated April 8, 1939, recorded at Book No. 90, Folio 130, Dr. Thomas Stark acquired the upper portion of said property in the suit of Octave J. Gisclair vs. no. 7535 Manuel Pitre;
3) By act of sale dated March 7, 1928, recorded at Book No. 60, Folio 409, Manuel Pitre acquired the whole of said property from Anecy Pitre;
4) By act of partition among the heirs of Livaudais Pitre dated September 15, 1919 and recorded at Book No. 50, Folio 525, Anecy Pitre acquired the whole of said property as a part of his share in the partition;
5) By act of partition among the heirs of Livaudais Pitre (Sr.) dated February 17, 1917, recorded at Book No. 47, Folio 477, Livaudais Pitre acquired the whole of said property as a part of his share in this partition.
The property partitioned by the heirs of Livaudais Pitre (Sr.) on February 17, 1917, is described as follows:
"A certain tract of land, situated in the Parish of Lafourche, on the left descending bank of Bayou Lafourche, at about fifty miles below the town of Thibodaux, measuring twenty-eight (28) arpents, less, sixty feet by forty arpents in depth, bounded above by lands of Dominique Gisclar, and below by lands of Louisiana Meadows Company, together with all the buildings and improvements thereon.

*458 Being the same property acquired by said Livaudais Pitre, from the United States Government about fifty years ago."
The sixty (60') foot strip referred to in the preceding description was sold by the widow and heirs of Livaudais Pitre, Sr. to the Louisiana Meadows Company in 1909.
The defendant, Louisiana Land, formerly Border Research Corporation, acquired title to all of the east half of section 37 and to all of section 38, which sections include the disputed property, by act of sale dated February 2, 1926, from Henry H. Timken, recorded at Book No. 57, Folio 538. The defendant traces it's title to the east half of section 37, by an unbroken chain of transfers, to patent number 5071 dated May 11, 1883 from the State of Louisiana to Jules Lapene. The defendant traces it's title to section 38, by an unbroken chain of transfers, to patent number 7879 dated May 23, 1901 from the State of Louisiana to J. M. Dresser.
In 1929, after his acquisition from Anecy Pitre, plaintiff's ancestor in title, Manuel Pitre, went into possession of property located in sections 37 and 38 under the following property description:
"A certain tract of land situated in the Parish of Lafourche, State of Louisiana, on the left descending bank of Bayou Lafourche, at about fifty miles below the Town of Thibodaux, measuring, one hundred nine feet and three and one-half inches, front along the said Bayou Lafourche, by forty (40) arpents in depth; bounded above by the land of Voltaire Pitre, and below by the land belonging to the Louisiana, Meadows Company, together with all the building and improvement thereon. The said vendor acquired the above described property from an act of partition between his brother and sister, passed before George Raymond, a Notary Public, on September 15, 1919."
The possession thus entered into by Manuel Pitre placed his lower boundary sixty (60') feet above the upper line of section 31 and his upper boundary one hundred and nine (109') feet above his lower boundary, at the front line. At this time however there had been no surveys of the property, there were no boundary markers, and possession in the rear was exercised without regard to boundaries. Also, possession was predominately confined to the front fourteen (14) arpents due to the low elevation and marshy nature of the property beyond that point. Just east of the forty (40) arpent line however there was a high ridge referred to as Point de Lomme or Point Blue which runs generally in a northwest to southeast direction. By coincidence the fourteen (14) arpent line falls at or just west of the midsection line of section 37. From 1929 and during the time that he owned it Manuel Pitre exercised possession of this property by constructing a house on it and by residing there with his brother-in-law, Louis Gisclair. He also allowed his father, Voltaire Pitre, to cultivate the area between his house and the fourteen (14) arpent line and to trap the area between the fourteen (14) arpent line and the forty (40) arpent line. During this time no one ever told Manuel Pitre and his family that they were trespassing or that they were possessing beyond the limits of their deed.
With his acquisition of the lower half of the property in 1934, the plaintiff went into possession in much the same manner as Manuel Pitre and his family had done in previous years. He moved into the house constructed by Manuel Pitre and allowed Voltaire Pitre to continue trapping in the rear in exchange for Voltaire's mule and plow. In that year he began digging a trainasse behind the house from about the fourteen (14) arpent line to the ridge (Point de Lomme) at the forty (40) arpent line. To keep it open the trainasse had to be cleaned out each year. The plaintiff also cultivated portions of the front and he hunted and trapped in the rear. In 1952 he purchased the upper half of the original tract from Eugene Cheramie. He paid property taxes, granted oil, gas, and mineral leases, granted verbal grazing leases and *459 cut the grass. Until 1952 there were no signs or other evidence of boundaries or of adverse possession and no one ever told him that he was trespassing or possessing beyond the limits of his title. Again, his possession of the rear was exercised without regard to bounds. After 1952 the plaintiff's activities in the rear of the property gradually diminished due to his age, and at the time of trial it had been fifteen (15) or twenty (20) years since he had personally been all the way to the forty (40) arpent line. During this period however he continued to grant oil, gas, and mineral leases and verbal grazing leases. The only written grazing lease granted by the plaintiff was in 1972 and it was not recorded. However this lease was still in existence and the lessee purportedly had cattle on the disputed property at the time of trial.
After its acquisition from Henry H. Timken in 1926 and continuously during the period of from 1931 to the early 1950's the defendant, Louisiana Land & Exploration Company, granted trapping and grazing leases covering the entire area within the east half of section 37 and the western portion of fractional section 38. In 1952 the defendant began surveying and posting the property. Between 1952 or 1953 and 1955 the defendant began digging canals around the perimeter of these sections and began reclamation of the land by pumping. From this time until the time of trial the defendant has granted trapping, grazing and mineral leases covering all of the east half of section 37 and the west side of fractional section 38, and portions of it have been fenced in since 1972 by one of its grazing lessees. This grazing lessee also purportedly had cattle on the disputed property at the time of trial.
Plaintiff contends that he and his ancestors in title have been in continuous corporeal or civil possession preceded by corporeal possession of the disputed property as owners thereof under deeds translative of title since 1929. Alternatively, he contends that he and his ancestors in title have been in constructive possession of the disputed property under deeds translative of title since 1929 and, therefore, that he is owner of the property in dispute by virtue of acquisitive prescription of ten (10) and thirty (30) years.
The defendant contends that it has been in corporeal and/or civil possession preceded by corporeal possession of the disputed property as record title owner thereof since its acquisition in 1926 and that the plaintiff has never been in corporeal or constructive possession of the disputed property. The defendant further contends that the rules of constructive possession are inapplicable insofar as the plaintiff's claim is concerned.
To enable one to acquire the ownership of immovable property by acquisitive prescription of either ten (10) or thirty (30) years it is essential that he possess the thing as owner. La.R.C.C. Article 3487 and La.R. C.C. Article 3500.
His possession need not be exercised over every part of it; however it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries. La.R.C.C. Article 3437.
When a person has a title and possession conformable to it, he is presumed to possess according to the title and to the full extent of its limits. La.R.C.C. Article 3498.
As used in La.R.C.C. Article 3437, the word "boundaries" means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in title deed if the possession be under a title. Leader Realty Company vs. Taylor, 147 La. 255 [256], 84 So.2d [So.] 648 (1920), Plaisance v. Collins, 365 So.2d 608 (La.App. 1st Cir. 1978). However, constructive possession of a part of a tract of land by reason of possession of the whole under color of title, cannot prevail over the adverse possession, whether the latter's possession be civil or corporeal, of the other party under a better or earlier title. Buras v. United Gas Pipe Line Company, 127 *460 So.2d 271 (La.App. 4th Cir. 1961), certiorari denied; Case v. Jeanerette Lumber & Shingle Company, 79 So.2d 650 (La.App. 1st Cir. 1955).
The Court finds that the evidence fails to establish that the plaintiff or his ancestors in title have ever exercised any acts of corporeal possession on the disputed property or that they have ever had constructive possession of the disputed property sufficient for purposes of acquisitive prescription of either ten (10) or thirty (30) years.
Although the evidence reflects that the plaintiff granted grazing leases and that he and before him, Manuel Pitre, hunted and trapped on some property in sections 37 and 38 to the rear of their possession in the front, the property over which their possession was exercised was never identified as being the property in dispute.
At trial it was established that the plaintiff's titles contain conflicting description of his upper boundary line. Whereas his deeds describe the property as having a front footage of one hundred and nine (109') feet widening to one hundred fifty-four and one-half (154½') feet at the forty (40) arpent line with the lower boundary running parallel with the sixty (60 `) feet above the northern boundary line of section 31, they also describe the property as being bounded above by Ernest Eymard, now or formerly. Although these descriptions coincide at the front line, they become conflicting as the line extends to the rear for the reason that the lower Eymard line diverges or widens from the upper line of section 31 at a greater angle than that called for in the description by measure. Thus the description of the plaintiff's upper line as being the lower Eymard line includes substantially more footage along the forty (40) arpent line than that called for by the description by measure.
The evidence also reflects that when the plaintiff and prior to him, his ancestor in title, Manuel Pitre, went into possession of the tract described in their deeds, as shown on the attached exhibit, they went into possession of a tract which extends perpendicularly from their front line to the northeast rather than parallel with and in conformity with the upper line of section 31 which extends at approximately a 60 degree angle from their front line to the east-northeast. Thus, their possession in the rear was exercised on a tract which was similar to the tract as described by measure, but which was actually located some distance above the disputed property south of and along a line subsequently described as the lower Eymard line. With the exception of a small triangular portion in the front of the property where the plaintiff's possession along the Eymard line overlaps with the description by measure taken from sixty (60') feet above the upper line of section 31, their possession has been confined to the area along the lower Eymard line as projected to the forty (40) arpent line.
Considering the evidence, it is clear that when the plaintiff and his ancestors in title went into possession of the property described in their deeds (when viewed from the forty (40) arpent line for purposes of explanation), it was their intention to possess from the lower Eymard line south for one hundred and fifty-four and one-half (154½') feet and not north for one hundred fifty-four and one-half (154½') feet from sixty (60') feet above the upper line of section 31. Nor was it their intent to possess from the lower Eymard line to sixty (60 `) feet above the upper line of section 31.
Therefore, neither the plaintiff nor his ancestors in title had the intent to corporeally or constructively possess as owner the property in question although the property is within the limits of their title as described by bounds.
Further, the Court finds that the defendant is an adverse possessor under a better title than that of the plaintiff. The evidence in this respect discloses that the defendant has title to the disputed property which it traces by an unbroken chain of transfers to the sovereign and corporeal possession, as owner, of substantial portions *461 of sections 37 and 38, including the disputed tract from 1952, at the latest, to the present. In view of the foregoing law the plaintiff's claims of constructive possession cannot prevail over an adverse possessor who has civil or corporeal possession under a better title.
To summarize, the Court finds that the plaintiff failed to establish any acts of possession either corporeal or civil preceded by corporeal over the disputed property or that he intended to possess as owner to the limits of this title sufficient for constructive possession. Further, the Court finds that the defendant is an adverse possessor by corporeal possession and/or civil preceded by corporeal possession of the disputed property under a better title than that of the plaintiff.
For these reasons the plaintiff's claims of prescription will be denied and there will be judgment in favor of the defendant declaring it to be the owner of the disputed property on the basis of record title as well as on the basis of ten (10) years acquisitive prescription.
Subsequent to the trial on the merits the plaintiff died survived by his widow and heirs who have since been substituted as parties plaintiff in his place. This will be reflected in the judgment.
Judgment will be rendered accordingly.
May 11, 1981
Respectfully submitted:
 /s/ W. J. Falgout
 W. J. FALGOUT, JUDGE
 17TH JUDICIAL DISTRICT COURT
 DIVISION "C"
*462 
NOTES
[1] For clarity, see exhibit attached to trial court's reasons.
[2] Plaintiff died after trial. His widow, Viola Eymard, and his children, Doris Charpentier, Steven Charpentier, Alvin Charpentier, Lawrence Charpentier and Henry Charpentier, were substituted as parties plaintiff.
[3] CCP 1973:

"A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."