416 So.2d 590 (1982)
Mrs. Sharon Riedlinger, Wife of/and Joseph M. GUTHRIE, Jr.
v.
RUDY BROWN BUILDERS, INC., Don Garland and Mr. and Mrs. Ralph Ragusa.
Nos. 5-33, 5-34.
Court of Appeal of Louisiana, Fifth Circuit.
June 8, 1982.
*591 McCann, McCann, Schroeder & Mirabile, James A. McCann, New Orleans, for plaintiff, appellant & appellee.
Taylor, Raggio & Sutherland, John H. Taylor, Baton Rouge, for defendant, appellee & appellant.
Amato & Creely, Terrence J. Lestelle, Gretna, for defendant & appellee.
Before BOUTALL, DUFRESNE and GRISBAUM, JJ.
GRISBAUM, Judge.
This case is concerned with the issues of damages for mental anguish and attorney's fees in an action styled as redhibition or "quanti minoris" involving a surveying error on the part of a builder-vendor's surveyor. The survey did not note the improper placement of a house in violation of parish ordinances and the subdivision's restrictive covenants. Relying on the erroneous survey, one home owner built a fence on his neighbor's property.
Plaintiffs in this case, Sharon and Joseph M. Guthrie, Jr., initially sought to have the trial court enjoin defendants, Mr. and Mrs. Ralph Ragusa, from maintaining and occupying the Ragusa residence at 5108 Tusa Drive, Marrero, Louisiana, alleging that the Ragusa house was placed such that it was in violation of parish ordinances and subdivision restrictive covenants. They also requested the Ragusas remove a fence they had erected which allegedly encroached on the Guthries' property. A preliminary injunction was granted by the trial court on March 27, 1979.
This action for injunction was followed by a "Petition for Damages" brought by plaintiffs, Mr. and Mrs. Guthrie, against the Ragusas, Rudy Brown Builders, Inc. (their vendor) and Don Garland (the surveyor of both the Guthrie and Ragusa property). The defendants, Ragusas, filed a "Third-Party Demand" against Rudy Brown Builders, Inc. and Don Garland. Rudy Brown Builders, Inc. also filed a "Third-Party Demand" against the Ragusas and Don Garland.
*592 Prior to the trial on the merits the following stipulations were made: (1) Since the gutter of the Ragusa house encroached on the property of the Guthries, a resubdivision of the property between the parties was agreed upon which would cure the encroachment; (2) Rudy Brown Builders, Inc. would pay the sum of $525.00 to the Guthries, on behalf of the Ragusas, to purchase a portion of the Guthries' property in order to cure the encroachment; (3) Rudy Brown Builders, Inc. would pay for the cost of effecting said resubdivision and transfer.
The only issues to be resolved at trial were that of damages for mental anguish and attorney's fees. After trial on the merits, the trial judge confirmed the stipulation made prior to trial and answered a judgment in favor of Mr. and Mrs. Guthrie and against Rudy Brown Builders, Inc. in the sum of $775.00, and in favor of Mr. and Mrs. Ralph Ragusa and against Rudy Brown Builders, Inc. in the sum of $500.00. Judgment was further entered in favor of Rudy Brown Builders, Inc. over against third-party defendant, Don Garland, in the amount of $1,275.00. The court held that there was a good faith error in surveying by Mr. Garland, the surveyor of the properties in question, which was imputed to Rudy Brown Builders, Inc., therefore, no attorney's fees were granted. The claim of the Guthries and Ragusas for mental anguish was not allowed by Judge Eason who cited the Supreme Court decision in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976) to support his denial.
The Guthries and Ragusas have appealed from that part of the trial court's decision which denies damages for mental anguish and attorney's fees.

FACTS
Plaintiffs-appellants, Mr. and Mrs. Guthrie, purchased a house and lot from defendant-appellee, Rudy Brown Builders, Inc., in October of 1977. Their neighbors, Mr. and Mrs. Ragusa, also bought their home from Rudy Brown Builders, Inc. some five months before in May of 1977. Rudy Brown was the builder as well as vendor of both of these homes. Don Garland, defendant in this suit, was hired by Rudy Brown and had prepared the surveys used at the respective acts of sale.
In approximately June of 1977, Mr. Ragusa attempted to fence his lot in accordance with the Don Garland survey dated December 3, 1976, which was used in the act of sale of his property. Testimony at trial is conflicting, but it seems that while constructing the fence Mr. Ragusa ran into difficulty when his measurements did not agree with stakes placed on his property. Mr. Ragusa testified that he informed the office of Rudy Brown Builders, Inc. of this discrepancy and Rudy Brown spoke to his wife by telephone. Rudy Brown testified he went out to the Ragusa property and advised Mr. Ragusa that the stakes on the Ragusa property designated the correct property line and that Mr. Ragusa's fence was incorrectly placed. In any case, the fence was completed using the Don Garland survey for reference.
After purchasing the adjoining lot and house in October 1977, Mr. and Mrs. Guthrie also attempted to construct a fence. While measuring his property, Mr. Guthrie found the Ragusa fence seemed to encroach upon his property. The Guthries hired a surveyor who discovered that a second Don Garland survey made July 20, 1977 did not reflect the incorrect placement of the Ragusa fence and a gutter encroachment on the Guthrie property. It seems Rudy Brown Builders, Inc. had incorrectly placed the Ragusa house upon its lot. This placement caused the gutter encroachment and violated the subdivision's restrictive covenants and the parish ordinances. The Don Garland survey in December 1976 did not reflect the actual placement of the Ragusa home but instead indicated the house was situated approximately five feet from the property line. The monumentation aspect by Don Garland on the Ragusa property was correct; the actual drawing which Mr. Garland signed as the survey was incorrect; thus, by relying upon this incorrect survey made in December 1976, Mr. Ragusa constructed his fence upon property which *593 would eventually become that of the Guthries. The second Don Garland survey (made in July 1977) used in the Guthrie sale also contained this error. The trial court determined Rudy Brown, president of Rudy Brown Builders, Inc., had no knowledge of this survey error before the sale of the adjoining property to the Guthries.

ATTORNEY'S FEES AND MENTAL ANGUISH DAMAGES
The Guthries and Ragusas attempt to base their claims for attorney's fees by characterizing their respective claims against Rudy Brown Builders, Inc. as actions in redhibition (La.C.C. Article 2520) or "quanti minoris" (La.C.C. Article 2541). Under these actions attorney's fees are recoverable when it can be shown that the vendor had prior knowledge of the latent defect and did not reveal the existence of the defect to his vendee. La.C.C. Article 2545. Specifically, the Guthries claim Rudy Brown Builders, Inc. is a manufacturer, and, therefore, is presumed to know of the defect. Rey v. Cuccia, 298 So.2d 840 (La. 1974). In the alternative, they contend if Rudy Brown Builders, Inc. is not found to be a manufacturer Rudy Brown, its president, had prior knowledge of at least one vice in the thing sold (the fence encroachment) but sold the property to the Guthries without informing them of this latent defect. Similarly, the Ragusas contend Rudy Brown Builders, Inc. is a manufacturer and thus had knowledge; therefore, they claim under La.C.C. Article 2545 they should receive attorney's fees. We find that the Guthries and Ragusas do not have actions in redhibition or "quanti minoris." Instead, their actions are more properly characterized as actions for breach of warranty against eviction.
As a seller Rudy Brown Builders, Inc. has two principal obligations, that of delivering and that of warranting the thing which he sells. La.C.C. Article 2475. It is primarily the breach of the second obligation that of "warranting" the thing which is sold that is the concern of this suit. Article 2476 states:
"The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices." (Emphasis added)
The central question is whether the improper placement of a home on its lot causing a gutter encroachment and a fence encroachment upon the adjacent property is covered by Articles 2500 through 2519 which deal with warranty against eviction or whether the improper placement of the house should be considered a "vice" in the thing sold and thereby covered by Articles 2520 through 2548. We find the improper placement of a house on a lot which causes encroachments upon adjoining property is more appropriately covered by the articles on warranty against eviction.
The articles under the eviction section of the Code contemplate two types of eviction; the first is the "loss suffered" from acts of third persons. Article 2500 and 2501 state respectively:
"Eviction is the loss suffered by the buyer of the totality of the thing sold, or of a part thereof, occasioned by the right or claims of a third person."
"Although at the time of the sale no stipulations have been made respecting the warranty, the seller is obliged, of course, to warrant the buyer against the eviction suffered by him from the totality or part of the thing sold, and against the charges claimed on such thing, which were not declared at the time of the sale."
Under the facts of this case, the Guthrie claim is covered by these articles and Article 2514 on partial eviction which states:
"If in case of eviction from a part of the thing, the sale is not canceled, the value of the part from which he is evicted, is to be reimbursed to the buyer according to its estimation, proportionably to the total price of sale."
The Ragusa fence and gutter have caused them to suffer a "loss" of a portion of their property. It is this situation, namely the *594 loss of a portion of the Guthries' property caused by the fence and gutter encroachments, that the eviction articles were designed to cover. The Ragusa fence has thus interrupted their peaceful possession of their property.
The second type of eviction found in Article 2504 is that of the "loss suffered" from acts of the vendor. This article states:
"Although it be agreed that the seller is not subject to warranty, he is, however, accountable for what results from his personal act; and any contrary agreement is void." (Emphasis added)
The Ragusa claim is in essence a claim against their vendor, Rudy Brown Builders, Inc., for eviction. By improperly placing their home and by providing them with an improper survey drawing, Rudy Brown Builders, Inc. exposed the Ragusas to suit by the adjoining landowners and thus to the requirement of either removing the fence and gutter encroachments or buying that portion of the Guthrie property that had these encroachments. This factual situation is similar to that of Katz v. Katz Realty Co., 228 La. 1008, 84 So.2d 802 (1955). In that case plaintiffs were reimbursed by their vendor for the amount they paid to purchase a portion of an adjoining landowner's property which had encroachments of their walls and foundation upon it. The Katz court analogized the reimbursement demand in that case to similar factual situations presented in earlier cases which allowed "reimbursement." See Katz, 84 So.2d 802, 804-05. Similarly, the reimbursement under eviction articles that Katz allows has been effected by the pre-trial stipulation that provides for the Ragusa purchase of that portion of the Guthrie property with the fence and gutter encroachments and reimbursement for that amount from Rudy Brown Builders, Inc.
Since both the claims of the Guthries and Ragusas are eviction claims, attorney's fees are not considered part of the "costs occasioned by the eviction" and cannot be recovered. La.C.C. Article 2506.3; Calvary Tabernacle v. Louisiana Central Bank, 393 So.2d 708, 710 (La.1981).
With respect to mental anguish damages, the obligation of warranty is one "to do", i.e. to come to the vendee's rescue. La.C.C. Article 1926 states:
"On the breach of any obligation to do, or not to do, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract, at his option, or he may require the dissolution of the contract, and in all these cases damages may be given where they have accrued, according to the rules established in the following section."
In the following section Article 1934.3 is applicable; it states in part:
"Although the general rule is, that damages are the amount of the loss the creditor has sustained, or of the gain of which he has been deprived, yet there are cases in which damages may be assessed without calculating altogether on the pecuniary loss, or the privation of pecuniary gain to the party. Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for work of some of the fine arts, are objects and examples of this rule."
Article 1934.3 has been interpreted by the Louisiana Supreme Court in Meador v. Toyota of Jefferson, Inc., 332 So.2d 433, 437 (La.1976) to mean that:
"Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable.
On the other hand, where a principal or exclusive object of a contract is intellectual enjoyment, nonpecuniary damages resulting from the nonfulfillment of that intellectual object are recoverable."
*595 Applying these principles to the instant case, we find that the Guthries and Ragusas are not entitled to recover damages for mental anguish. Although some aesthetic enjoyment may be important, the object of the contract of sale of a house is primarily physical gratification. According to Webster's New Collegiate Dictionary a "house" is "a building that serves as living quarters ... a shelter or refuge ..." Like the automobile repair in Meador, the primary purpose in purchasing the houses and lots involved in this suit was the procurement of living quarters and, thus, the "utility" of these structures or physical gratification was the principal object of the contracts. See Meador, 332 So.2d 433, 437-38. Nonpecuniary damages, therefore, are not recoverable.
For the reasons assigned, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the appellants.
AFFIRMED.